IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARTHUR FOULKS and PERRY FOULKS, a minor child by his father and next friend, ARTHUR FOULKS,<br><br>        Plaintiffs,<br><br>vs.<br><br>CECIL TODD EMERY, MICKEY RODGERS, individually and as agents of the department of law enforcement of the VILLAGE OF PULASKI, a municipal corporation, RANDY KERN, individually and as an agent of PULASKI COUNTY, ILLINOIS, a municipal corporation, DEPUTY JOHN DOE, as one or more other agents of the PULASKI COUNTY SHERIFF'S DEPARTMENT, whose names are unknown at the commencement of this suit, but whose names will be added upon receipt of discovery disclosures, MASTER SGT. JON E. WRIGHT, SGT. FNU GRAMMAR, TROOPER FNU TURNER, individually and as agents of the department of law enforcement, of the STATE OF ILLINOIS, and the VILLAGE OF PULASKI, a municipal corporation,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL NO. 04-4122-JLF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**FOREMAN, District Judge:**

      Before the Court are motions for summary judgment filed by defendants Jon Wright, Daryl Grammar, and Tammy Turner, (Doc. 68), by Mickey Rodgers, Cecil Todd Emery, and the Village of Pulaski, (Doc. 69), and by Randy Kern and Pulaski County (Doc. 71). Plaintiffs have filed responses, (Docs. 83,84), and defendants have filed replies. (Docs. 86,87).

I.  **Background.**

The following facts are not in dispute except where noted. On June 6, 2003, an arrest warrant was issued for Jamel Foulks in Pulaski County. (Doc. 68, Exh. B). On June 9, 2003, Village of Pulaski Officer Mickey Rodgers observed Jamel Foulks standing outside of his residence at 1000 Birch Street, Pulaski, Illinois. (Doc. 70, Exh. A, Rodgers Affidavit ¶3; Doc. 68, Exh. A, p.4). Officer Rodgers approached Jamel stating that he had a warrant for Jamel's arrest. (Doc. 70, Exh. A, Rodgers Affidavit ¶¶5,6). Jamel retreated, and despite Officer Rodger's orders to stop, Jamel ignored him and went inside the house. (Doc. 70, Exh. A, Rodgers Affidavit ¶¶5-9).

After Jamel went into the house, Officer Rodgers spoke to Jamel's brother, plaintiff Perry Foulks. (Doc. 70, Exh. A, Rodgers Affidavit ¶11). Officer Rodgers told Perry that he had a warrant for Jamel's arrest, and asked Perry to go into the house and tell Jamel to come out. (Doc. 70, Exh. A, Rodgers Affidavit ¶12; Doc. 68, Exh. A, p.9).

Perry went inside the house, and told his father, plaintiff Arthur Foulks, that Officer Rodgers was looking for Jamel. (Doc. 71, Exh. B, pp.5-6, Perry Foulks Dep., Tr.20-24). Arthur asked Perry if Jamel was home, Perry responded no, and Arthur asked Perry to search the house to make sure Jamel was not inside. (Doc. 71, Exh. B, pp.5-6, Perry Foulks Dep., Tr.20-24). At some point, Arthur called his attorney, Michael P. O'Shea. (Doc. 71, Exh. B, p.8, Perry Foulks Dep., Tr.29). Attorney O'Shea (or his office) gave Arthur a telephone number which he wrote down and gave to Perry to give to the police officers. (Doc. 71, Exh. B, p.8, Perry Foulks Dep., Tr.29-30).

Meanwhile, Officer Rodgers radioed the Village of Pulaski Sheriff, Cecil Todd Emery, and the Pulaski County Sheriff's Department for assistance. (Doc. 70, Exh. A, Rodgers Affidavit ¶14; Exh. E, Emery Affidavit ¶3). Sheriff Emery arrived, and thereafter, plaintiff Perry Foulks exited the house, and according to defendants, said that Jamel was not coming out. (Doc. 70, Exh. A, Rodgers Affidavit ¶¶15,16; Exh. E, Emery Affidavit ¶5). Perry denies saying that Jamel would not come out, and states that he simply told Officer Rodgers that Jamel was not at home. (Doc. 71, Exh. B, p.5, Perry Foulks Dep., Tr.20).

While at another location, Illinois State Trooper Master Sergeant Jon Wright received a request from Pulaski County for assistance in executing the warrant. (Doc. 68, Exh. C, Wright Affidavit ¶2). Master Sergeant Wright dispatched Illinois State Troopers Sergeant Daryl Grammar and Tammy Turner to the residence at 1000 Birch Street. (Doc. 68, Exh. C, Wright Affidavit ¶3; Grammar Affidavit ¶2; Turner Affidavit ¶2; Exh. A, p.4). Shortly thereafter, Troopers Grammar and Turner arrived at the scene, as did Tony Neely of the Pulaski County Sheriff's Department. (Doc. 70, Exh. A, Rodgers Affidavit ¶17).

Shortly thereafter, Trooper Grammar contacted Master Sergeant Wright, a trained negotiator, and asked him to proceed to 1000 Birch Street to negotiate with Perry and Jamel in an attempt to get Jamel to come out of the residence. (Doc. 68, Exh. C, Wright Affidavit ¶4; Grammar Affidavit ¶4; Turner Affidavit ¶4; Doc. 70, Exh. E, Emery Affidavit ¶8). Upon arriving at the residence, Master Sergeant Wright spoke with Trooper Grammar and Officer Rodgers. (Doc. 68, Exh. C, Wright Affidavit ¶5; Doc. 70 Exh. A, Rodgers Affidavit ¶4). Officer Rodgers told Wright that he had just observed Jamel Foulks go into the residence.

(Doc. 68, Exh. C, Wright Affidavit ¶6). Sergeant Grammar informed Wright that Jamel Foulks had previously been arrested on a weapons charge on two previous occasions. (Doc. 68, Exh. C, Wright Affidavit ¶7).

According to defendants, Master Sergeant Wright then knocked on the front door of the residence and advised plaintiff, Perry Foulks, that the officers had an arrest warrant for his brother, Jamel Foulks. (Doc. 68, Exh. C, Wright Affidavit ¶4; Grammar Affidavit ¶5; Doc. 70, Exh. E, Emery Affidavit ¶11). According to plaintiff, it was Officer Rodgers who told him that they had a warrant for his brother's arrest. (Doc. 68, Exh. A, p.9). Plaintiff Perry Foulks told Wright that he could not come in unless he had a search warrant (Doc. 71, Exh. B, p.7, Perry Foulks Dep., Tr. 25). Seeing an open window, Wright advised Perry that he would come in through the window. (Doc. 68, Exh. C, Wright Affidavit ¶12). Perry did not open the door and Wright entered the residence through the window. (Doc. 68, Exh. C, Wright Affidavit ¶13; Grammar Affidavit ¶¶6,7; Turner Affidavit 7). Trooper Turner, Emery, Rodgers, and Kern then entered the residence through the front door after Officer Rodgers kicked it open. (Doc. 68, Exh. C, Wright Affidavit ¶15; Turner Affidavit ¶8). Although plaintiffs' complaint alleges that Emery gained entry by "kicking it open, damaging the frame of the door," (Doc. 36, p. 5, ¶30 ), at his deposition, plaintiff Perry Foulks testified that the officers "just opened it and came in." (Doc. 71, Exh. B. P. 9, Perry Foulks Dep., Tr. 35).

Officers Wright, Turner, Emery, Rodgers and Kern searched the residence but could not locate Jamel. (Doc. 68, Exh. C, Wright Affidavit ¶¶15,16; Turner Affidavit ¶9).

Thereafter, according to defendants, Officer Emery and Perry got into some sort of altercation and Emery arrested Perry by placing him in handcuffs. (Doc. 70, Exh. E, Emery Affidavit, ¶¶17-21; Exh. A, Rodgers Affidavit, ¶¶28-30).  Perry Foulks denies defendants' version of events, but does admit that he pushed Officer Emery's hand away as Emery was attempting to arrest and handcuff him. (Doc. 71, Exh. B, pp.10-11,20, Perry Foulks Dep., Tr. 37-38,40-43,76-77).

Officer Emery arrested Perry, and Perry was later charged with aggravated battery, obstructing justice, resisting a police officer, and aggravated assault.  Perry pleaded guilty to aggravated battery, resisting a police officer and aggravated assault.  The obstructing justice charge was dismissed (Doc. 83, Exh. A).

Based on the above events, plaintiffs have sued the individual defendants, (Emery, Rodgers, Kern, Wright, Grammar, Turner, and the unnamed defendants), for violating their constitutional rights under 42 U.S.C. § 1983, (Count I), and under Illinois law for illegal imprisonment, illegal search of residence, false arrest, and malicious prosecution (Count II). Plaintiffs have sued the Village of Pulaski and Pulaski County for allegedly having policies and/or customs that violated their constitutional rights under 42 U.S.C. § 1983. Defendants' motions for summary judgment are discussed below.

## II.  **Summary Judgment Standard.**

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *FED.R.CIV.P. 56.*  The initial burden of showing that no genuine issue of material fact exists is on the moving party.

*Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1267 (7th Cir. 1996). Once the moving party has demonstrated the absence of any genuine factual issues, the nonmoving party, to withstand summary judgment, must present specific facts showing that a genuine issue exists for trial. *FED.R.CIV.P. 56(e)*. A genuine issue of material facts exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 447 U.S. 242, 249 (1986).

### III.     Discussion.

####      A.     Plaintiffs' § 1983 Claims Against the Individual Defendants (Count I).

Plaintiffs have brought claims against the individual defendants alleging that they violated plaintiffs' federal constitutional rights to be free from unreasonable and warrantless searches and seizures and false imprisonment. Plaintiff Perry Foulks also alleges that defendants violated his rights to be free from malicious prosecution and from false arrest.

Initially, the Court notes that plaintiffs have conceded that the individual defendants cannot be sued under § 1983 in their official capacities. (Doc. 81, p.2;, Doc. 84, p.2); *see also Jungels v. Pierce*, 825 F.2d 1127, 1129 (7th Cir. 1987) (when a plaintiff names a local government as a defendant in a § 1983 action, claims against government officials in their official capacities are redundant). Accordingly, the motion for summary judgment on plaintiffs' official capacity claims filed by defendants Wright, Grammar, and Turner is granted. Plaintiff's official capacity claims under § 1983 against Wright, Grammar, and

Turner are dismissed with prejudice.[1]

As to plaintiffs' individual capacity claims against the individual defendants, the Court finds that plaintiffs have failed to state a constitutional violation. It is well-settled that a police officer with an arrest warrant can enter a suspect's residence to execute the warrant if there is reason to believe he will be found there; the officer does not need a search warrant. *Payton v. New York*, 445 U.S. 573, 603 (1980); *United States v. Pallais*, 921 F.2d 684, 690 (7th Cir.1990).

Plaintiffs argue that the officers never actually showed them the warrant. It appears, however, that plaintiffs may be confusing a search warrant with an arrest warrant. Here, there is no dispute that there was a valid warrant outstanding for Jamel Foulks' arrest. The law is clear that law enforcement officers with an outstanding arrest warrant may enter a residence if they can demonstrate a reasonable belief that the person named in the warrant: 1) lives in the dwelling being searched; and, 2) that the person will be in the residence at the time of entry. *Payton*, 445 U.S. at 608. There is no requirement that the officers actually show the warrant to the occupants prior to entering the residence. Furthermore, police with an arrest warrant can search the entire residence of the person named in the warrant in order to execute it, no search warrant is required. *See Pallais*, 921 F.2d at 690-91.

As noted, the record is clear that there was a valid outstanding warrant for Jamel's arrest. The record is also clear that the officers had a reasonable belief that Jamel lived at the residence being searched, and that they had a reasonable belief that Jamel was inside the

---

[1] The official capacity claims under § 1983 against Cecil Todd Emery, Mickey Rodgers, Randy Kern and John Does have already been dismissed. (See Doc. 61, p.6).

residence at the time of entry. As such, the officers' entry and search of the residence was lawful. *See Steagald v. United States*, 451 U.S. 204, 221 (1981) (Arrest warrant alone will suffice to enter suspect's own residence to effect his arrest, . . . ) (*citing Payton v. New York*, 45 U.S. 573, 602-603 (1980)). In addition, any alleged "detention" was permissible under the Fourth Amendment. *See Anderson v. United States*, 107 F.Supp.2d 191, 197 (E.D.N.Y.2000) (*citing Michigan v. Summers*, 452 U.S. 692 (1981) (police are entitled to briefly detain individuals on the premises when a valid arrest warrant is executed). For these reasons, defendants' motions for summary judgment on plaintiffs' § 1983 claims for violations of their rights to be free from unreasonable and warrantless searches and seizures and false imprisonment are granted.[2]

Perry Foulks also alleges that defendants violated his rights under to be free from malicious prosecution and false arrest. Perry's § 1983 claim for malicious prosecution has already been dismissed. (Doc. 61, pp.4-8) (*citing Smith v. Lamz*, 321 F.3d 680, 684 (7th Cir. 2003) (plaintiff may not maintain a federal action under § 1983 for malicious prosecution).

As to Perry's false arrest claim, the Court notes, again, that there was no constitutional violation. To succeed on a false arrest claim, Perry must prove that he was arrested without probable cause. *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996) (*citing Jones by Jones*

---

[2]Plaintiffs argue that Master Sergeant Wright was disciplined for entering the residence without permission because he violated an Illinois State Police administrative regulation. (Doc. 84, Exh. A). A violation of a state statute or administrative regulation does not necessarily imply a constitutional violation. *Snowden v. Hughes*, 321 U.S. 1, 11 (1944) (mere violation of a state statute does not infringe the federal constitution). *See also Whitman v. Nesic,* 368 F.3d 931, 935 n. 1 (7th Cir. 2004) (the mere fact that state rules were violated does not automatically amount to a constitutional violation or give rise to a § 1983 claim) (*citations omitted*).

*v. Webb*, 45 F.3d 178, 181 (7th Cir.1995)). A police officer has probable cause to arrest when "the facts and circumstances within [his] knowledge and of which [he has] reasonably trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Booker*, 94 F.3d at 1057 (*citations omitted*). Probable cause is evaluated "not on the facts as an omniscient observer would perceive them but on the facts as they would have appeared to a reasonable person *in the position of the arresting officer* -seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir.1992) (*emphasis in original*) (*citations omitted*). Although the issue of probable cause in a damages suit like this one generally is a jury question, the court appropriately may conclude that probable cause existed as a matter of law "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1247 (7th Cir. 1994).

In Illinois, obstruction of justice is defined, in part, as:

**§ 31-4. Obstructing justice.**

A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

> (a) Destroys, alters, conceals or disguises physical evidence, plants false evidence, furnishes false information; . . .

*720 ILCS 5/31-4.*

Resisting or obstructing a peace officer is codified at 720 ILCS 5/31-1 which states, in part:

> **§ 31-1. Resisting or obstructing a peace officer or correctional institution employee.**
>
>> (a) A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer or correctional institution employee of any authorized act within his official capacity commits a Class A misdemeanor.
>
> *720 ILCS 5/31-1.*

Under Illinois law, it is well settled that under 720 ILCS 5/31-1, the resistance must be physical. In other words, mere argument will not constitute resisting a peace officer. *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) (*citing People v. Weathington*, 411 N.E.2d 862, 863-64 (Ill. 1980); *People v. Raby*, 240 N.E.2d 595, 599 (1968); *People v. Long*, 738 N.E.2d 216, 222 (2000) (*other citations omitted*).

Here, the record is clear that the officers had probable cause to arrest Perry both for obstructing justice and resisting an officer. As noted, Officer Rodgers had a warrant for Jamel's arrest and observed him retreat into the house without emerging. In addition, Officer Rodgers communicated both the fact of the warrant and his belief that Jamel was in the house to the other officers. As such, the officers had a reasonable belief that there was a warrant for Jamel's arrest, that he was inside the residence, and that they had a lawful right to enter and search the house to effectuate the arrest. Furthermore, Perry admits that Officer Rodgers told him that they had a warrant for Jamel's arrest, and Perry admits that he refused to allow the officers into the home. Perry also admits that he pushed Officer Emery away as Officer Emery attempted to arrest him. Although Perry describes the resistance as less than violent, Perry does nonetheless admit to an act of physically pushing a part of Emery's body away.

Under all of the above facts and circumstances, the Court finds that the information within the officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant prudent persons in believing that Perry had committed offenses subjecting him to arrest for obstructing justice and resisting a peace officer.

The Court also notes that Perry's § 1983 claim for false arrest fails under *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck v. Humphrey*, a § 1983 claim that would either negate an element of, or necessarily imply the invalidity of, a conviction is barred. Here, Perry's challenge to his false arrest claim would necessarily impugn or imply the invalidity of his conviction for false arrest, and therefore cannot survive *See Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir.2004) (a successful challenge to a false arrest can indeed impugn the validity of a plaintiff's conviction).

Finally, the Court notes that although the obstruction of justice charge was dismissed, Perry pleaded guilty to aggravated battery, resisting a police officer, and aggravated assault. Here, defendants have shown that they had an arrest warrant for Jamel Foulks and therefore, their entry into the residence was lawful. The fact that Perry pleaded guilty to several of the offenses for which he was arrested precludes any § 1983 claim that he might have had for false arrest. *See Williams v. Schario*, 93 F.3d 527, 528-29 (8th Cir. 1996) (a plea of guilty forecloses a § 1983 claim for arrest without probable cause).

For all of the above reasons, Perry Foulks' § 1983 claim for false arrest fails. Defendants' motions for summary judgment on Perry Foulks' false arrest claim under 42

U.S.C. § 1983 are granted.[3]

### B. Plaintiffs' State Law Claims Against the Individual Defendants (Count II).

Plaintiffs have sued the individual defendants under Illinois law for illegal search of the residence, and for illegal seizure of their persons. Plaintiff Perry Foulks has also sued under Illinois law for malicious prosecution and false arrest.

In Illinois, an officer executing an arrest warrant is authorized to enter a building where the person is or is "reasonably believed to be, if he is refused admittance after announcing his authority and purpose.'" *People v. Stibal*, 372 N.E.2d 931, 933 (Ill.App.Ct. 1978); *People v. Sain*, 461 N.E.2d 1043, 1046 (2d Dist. 1984). Once the officers validly enter the residence under a valid arrest warrant, they are "justified in eliminating all places where the arrestee may be hiding before moving on." *Stibal*, 372 N.E.2d at 933 (Ill.App.Ct. 1978). Accordingly, as under federal law, the individual defendants' entry and search of the residence was also lawful under Illinois law.

With regard to any alleged detention of plaintiffs, Illinois courts have applied the

---

[3] Defendants other than Emery have moved for summary judgment on the ground that they were not personally involved in Perry's arrest. It is true that liability under § 1983 must be based on a defendant's personal involvement in the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995); *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir.1994). It is not necessary, however, that a defendant participate directly in the deprivation. The official is sufficiently involved "if [he] acts or fails to act with a deliberate or reckless disregard of plaintiffs constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with [his] knowledge and consent." *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985). Perry's deposition testimony indicates that at least several of the other officers may well have been "sufficiently involved" because they were present and in the vicinity of where the arrest occurred. The point is moot, however, because the Court finds no constitutional violation in the arrest or otherwise.

*Terry v. Ohio* standard. *People v. Bailey*, 733 N.E.2d 891, 894 (Ill.App.Ct. 2000). Under *Terry v. Ohio*, the reasonableness of a detention is determined by ascertaining: (1) whether the officer's action was justified at its inception, "and (2) 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" *Bailey*, 733 N.E.2d at 894 (*citations omitted*). Initially, the Court notes that it is not clear from the record, (prior to Perry's arrest), whether the officers took any actions to specifically detain plaintiffs while they searched the residence. Even if defendants had specifically detained plaintiffs during the search, based on the record, the Court finds that under *Terry v. Ohio*, any brief detention of the plaintiffs would have been justified, and such detention would have been reasonably related in scope to the circumstances which justified the interference, (i.e, the attempted execution of the arrest warrant for Jamel Foulks). For these reasons, the individual defendants' motions for summary judgment on plaintiffs' state law claims for illegal search of the residence and illegal detention of their persons are granted.

As to Perry's state law claim for false arrest, as noted, the officers had probable cause to arrest Perry. As such, Perry's state law false arrest claim fails. *See Kincaid v. Ames Dept. Stores, Inc.*, 670 N.E.2d 1103, 1109 (Ill.App.Ct. 1996) (In Illinois, probable cause is an absolute bar to a claim for false arrest). As to Perry's malicious prosecution claim, as noted in this Court's previous order, only the malicious prosecution claims with regard to obstructing justice survives (See Doc. 61, p.8). As noted, however, the officers had probable cause to arrest Perry for obstructing justice. As such, this claim too must fail. *See Vincent v. Williams,* 664 N.E.2d 650, 652 (Ill.App.Ct. 1996) (required element of malicious

prosecution claim is absence of probable cause). For these reasons, defendants' motions for summary judgment on Perry Foulks' state law claims for malicious prosecution and false arrest are granted.

### C. Plaintiffs' § 1983 Claims Against the Municipalities (Count III).

Plaintiffs have also sued the Village of Pulaski and Pulaski County under 42 U.S.C. § 1983 alleging that these municipalities "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in Pulaski, Illinois . . ." Plaintiffs further allege that it was their policy and custom to "inadequately and improperly investigate citizen complaints of police misconduct, . . ." and "to inadequately supervise and train its police officers, . . ." (Doc. 36, p.10).[4]

A municipality is liable under 42 U.S.C. § 1983 when a deprivation of constitutional rights is caused by a municipal policy or custom. *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Such liability may be demonstrated in three ways: (1) by an express policy that, when enforced, causes a constitutional deprivation; (2) by a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) by a showing that the constitutional injury was caused by a person with final policymaking authority. *Baskin v. City of Des Plaines*, 138 F.3d 701, 704-05 (7th Cir.1998).

Defendants have submitted an affidavit from Chief of Police Cecil Todd Emery which

---

[4] Although plaintiffs' mention the State of Illinois in the body of the complaint, the State of Illinois was not listed as a party in the complaint's caption, nor have plaintiffs served the State of Illinois. Accordingly, the State of Illinois is deemed not a party to this action.

denies that the Village of Pulaski had a policy or custom for police officers to be deliberately indifferent or to violate the constitutional rights of others. (Doc. 70, Exh. E, p. 4). Plaintiffs, however, have continued to rest upon mere conclusory allegations concerning the existence of municipal customs or policies with no factual support. The record contains no evidence whatsoever that the municipal defendants had a custom or policy of being deliberately indifferent to people's constitutional rights, inadequately investigating complaints, or inadequately training and supervising police officers. Accordingly, defendants' motions for summary judgment on Count III are granted. *See e.g., Sivard v. Pulaski County*, 17 F.3d 185, 189 (7th Cir. 1994) (district court properly granted summary judgment to Pulaski County, the Pulaski County Sheriff's Department, and Sheriff because plaintiff's failed to establish a municipal policy or custom).

### IV.    Summary.

Based upon the above, the motions for summary judgment filed by defendants John Wright, Daryl Grammar, Tammy Turner, (Doc. 68), by Officer Rodgers, Emery and the Village of Pulaski, (Doc. 69), and by Randy Kern, and Pulaski County, (Doc. 71), are **GRANTED.** This action is **DISMISSED WITH PREJUDICE.** A separate Judgment shall accompany this Order.

**IT IS SO ORDERED.**
**DATED: May 23, 2006.**

*s/ James L. Foreman*
**DISTRICT JUDGE**